UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JPC MERGER SUB LLC, | Civil Action No. 12-2825 (MAS) |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| BAKER ENGINEERING AND RISK, CONSULTANTS, INC., | |
| Defendant. | |

This matter comes before the Court on Defendant Baker Engineering and Risk Consultants, Inc.'s ("Defendant" or "BakerRisk") Motion to Compel certain discovery [dkt. no. 27]. Plaintiff JPC Merger Sub LLC ("Plaintiff" or "JPC") opposed the Motion [dkt. no. 28]. The Court has considered the Parties' submissions pursuant to FED. R. CIV. P. 78 and, for the reasons set forth below, Defendant's Motion is **GRANTED**, in part, and **DENIED**, in part.

I.  INTRODUCTION

This action arises out of construction of an ultra violet water disinfection facility for delivery of safe drinking water to New York City. In January 2008, SEW Construction ("SEW") entered into a contract with the New York City Department of Environmental Protection ("NYDEP") in connection with construction of the water treatment facility in Valhalla, New York ("the Project").

SEW Construction undertook the general contracting component of the Project. In October 2008, SEW awarded the contract for fabrication and delivery of precast concrete wall

panels for various buildings at the Project to JPC.[1] JPC, in turn, retained BakerRisk to provide blast engineering services for certain panels. Pursuant to the Purchase Order between JPC and BakerRisk, BakerRisk became the engineer of record for the complete design of the precast panels to be fabricated, delivered and installed pursuant to JPC's contract with SEW.

BakerRisk performed its design work on the precast panels between October 2008 and October 2009. Following BakerRisk's design of the precast panels, JPC commenced production in February 2010.

In late March or early April of 2010, a cracking problem developed on the exterior of the panels that had been fabricated by JPC and placed in storage. In July 2010, JPC suspended production of the panels pending an investigation of the cause of the cracking.

SEW subsequently retained an outside engineering firm, Simpson Gumpertz & Heger ("SGH"), to determine the cause of the cracks. On July 13, 2010, SGH provided its report ("the SGH Report") to SEW. On that same day, SEW sent the report to JPC. In response, on July 19, 2010, JPC sent a letter to SEW disputing the conclusions of the SGH Report and reiterating that it had no responsibility for the panel design.

In August 2010, SEW retained Weidlinger Associates, Inc. ("Weidlinger") to become the engineer of record for the subject panels. An investigation ensued and, thereafter, a Notice of Claim was served by JPC on BakerRisk on August 25, 2010 concerning the engineering and design services performed by BakerRisk.

On September 15, 2011, JPC retained SGH to perform expert services and investigate the initial design of the precast walls. On November 11, 2011, BakerRisk provided notification that

---

[1] The Purchase Agreement between SEW and JPC required fabrication and delivery of certain precast architectural wall panels for twelve buildings on the Project site.

it ceased working on the Project and, on the same date, JPC issued a Notice of Termination. Subsequently, on May 10, 2012, JPC instituted the instant action against BakerRisk for professional negligence, breach of contract, and breach of express and implied warranties.

BakerRisk now seeks production of certain documents which JPC has withheld as privileged. Specifically, BakerRisk seeks (1) the SGH Report; (2) the Weidlinger Report; (3) written communications with engineers that JPC did not retain as experts; and (4) communications between JPC and SEW.

## II.  LEGAL STANDARDS

### A.  Work Product Doctrine

The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

The work product doctrine, therefore, protects the "confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991). "[T]his protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662 (3d Cir. 2003). Thus, the doctrine recognizes the need for a "lawyer [to] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510 (1947).

Courts in this Circuit have adopted a "two part test for ascertaining whether the documents (or things) at issue should be protected under the work product doctrine." E.g., Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 306 (D.N.J. 2008) (collecting cases). "The first prong of the inquiry is the 'reasonable anticipation' test, which requires that the 'court determine at what point in time litigation could reasonably have been anticipated.'" In re Gabapentin Patent Litig., 214 F.R.D. 178, 183 (D.N.J. 2003) (citation omitted); see also Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993).

Second, the Court must determine whether the documents were prepared "primarily for the purposes of litigation." Louisiana Mun., 253 F.R.D. at 309. "Accordingly, documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work product doctrine." Id. at 308. "Even where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work product privilege still depends primarily on the reason or purpose for the documents' production." In re Gabapentin, 214 F.R.D. at 184 (citing In re Grand Jury Investigation, 599 F.2d 1224, 1229 (3d Cir.1979)).

### B. Common Interest Exception

"Most courts hold that to waive the protection of the work product doctrine, the disclosure must enable an adversary to gain access to the information." Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991). But when two parties are prospective co-defendants in an anticipated litigation, there is an exception to this general rule. See Holland v. Island Creek Corp., 885 F.Supp. 4, 6 (D.D.C. 1995). The "common interest" exception may be asserted with respect to communications among counsel for different parties if "'(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of

4

furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties.'" Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 262 (App. Div. 2001) (citing Holland, 885 F. Supp. at 6).

## III. DISCUSSION

### A. The SGH Report

As neither Party appears to dispute the relevance of the SGH Report, the issue is whether the SGH Report is properly characterized as privileged. JPC claims the SGH Report is protected from disclosure as attorney-client work product prepared pursuant to a common interest between JPC and SEW. Before a common interest exception can apply, however, the underlying privilege must first be established. Louisiana Mun., 253 F.R.D. at 309. "The party asserting work product protection bears the burden to show the doctrine applies." Id. at 306 (citing Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir.1982)).

As a threshold matter, the SGH Report was not prepared by or on behalf of JPC. Rather, it was prepared by SGH on behalf of SEW. It is questionable, then, whether the common interest doctrine (and, by extension, the work product doctrine) would even apply to the SGH Report. Nonetheless, even assuming, *arguendo*, that there was a common interest between JPC and SEW at the time the SGH Report was prepared, the Report is still not saved by work product protection.

First, as of the date of the SGH Report, it would have been reasonable to anticipate litigation. SEW could have reasonably anticipated litigation based simply on the fact that it retained SGH. And JPC certainly anticipated litigation, as evidenced by the Notice of Claim it sent to BakerRisk on August 25, 2010. The Notice of Claim made a demand on BakerRisk for "any and all loss, liability, claim, damage, expense, including costs of investigation and defense

and reasonable attorneys' fees and expenses . . . arising out of or related to Baker's errors and omissions regarding its services on the Project." Pl.'s Br. at Ex. A (Aug. 25, 2010 Notice of Claim). Thus, the Court concludes that it was reasonable for both SEW and JPC to anticipate litigation at the time of the SGH Report.

The second prong of the analysis is, however, fatal to JPC's claim of privilege. This analysis looks at "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Martin, 983 F.2d at 1260 (citation omitted). Here, little to no evidence is presented as to SEW's state of mind when it commissioned the SGH Report. The Court, therefore, is left to speculate as to SEW's intentions based on the objective evidence presented.

Based on this evidence, it does not appear that the SGH Report was prepared because of the prospect of litigation. Instead, SEW appears to have commissioned the Report in order to determine the cause of the cracks. The SGH Report, in other words, was prepared in the ordinary course of business in order to find a solution to a problem. However, "documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work product doctrine." Louisiana Mun., 253 F.R.D. at 307. JPC presents no evidence to the contrary. See Kida v. EcoWater Sys. LLC, 2011 WL 1883194, at *3 (E.D. Pa. May 17, 2011) (finding no work product privilege where plaintiff failed to demonstrate that the document was prepared in anticipation of litigation). Having determined that the underlying privilege is inapplicable, the Court need not reach the issue of whether SEW and JPC shared a common interest (such that the common interest exception would apply). See Louisiana Mun., 253 F.R.D. at 309. Accordingly, BakerRisk's Motion with respect to the SGH Report is **GRANTED**.

## B. The Weidlinger Report

BakerRisk also seeks production of the Weidlinger Report and corresponding email from a Weidlinger associate to JPC's attorney. BakerRisk claims the information must be disclosed because Weidlinger is a fact witness, not an expert. JPC, on the other hand, claims the report is not discoverable because it was prepared by a nontestifying expert. JPC also claims the Weidlinger Report is privileged as attorney work product.

Federal Rule of Civil Procedure 26(b)(4)(D) provides that "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." The Rule "thus creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." Plymovent Corp. v. Air Tech. Solutions, Inc., 243 F.R.D. 139, 143 (D.N.J. 2007).

In this case, JPC has submitted a letter which shows that Weidlinger was retained "to investigate the precast-wall panel design at the referenced project, *to issue a report to this law firm on your findings*, and *to render expert testimony*, if we so desire and advise you." Pl.'s Br. at Ex. G (Sept. 20, 2011 Letter to M. Kirmani) (emphasis added).[2] Thus, Weidlinger would properly be considered a nontestifying expert within the meaning of Rule 26(b)(4)(D).

That Weidlinger may have been retained in the ordinary course of business sometime in July 2010 does not change this conclusion. The Court makes no determination as to Weidlinger's

---

[2] That the letter is dated September 20, 2011—one week after the date of the Weidlinger Report—does not change this conclusion. The Court's in camera review confirms that Weidlinger was, in fact, retained by JPC at an earlier date.

earlier role. The Court merely concludes that at least as of the date of the Weidlinger Report, Weidlinger was acting as a consulting expert for JPC.

The Weidlinger Report, moreover, is protected as attorney work product. First, litigation was anticipated as of the date of the Report. Indeed, JPC served its Notice of Claim on BakerRisk more than a year prior to the Report. And, as the September 20, 2011 Letter demonstrates, the Weidlinger Report also appears to have been generated for the purposes of litigation. Accordingly, BakerRisk's Motion with respect to the Weidlinger Report and related email is **DENIED**.

### C. JPC's Communications with Engineers it Did Not Retain

BakerRisk seeks production of communications between JPC and Tomasetti Communications ("Tomasetti") and HavTek Communications ("HavTek"), engineering firms which were consulted but ultimately not retained as experts. JPC claims the documents are protected by the consulting expert privilege and the work product doctrine.

Tomasetti was engaged by JPC's counsel in March 2011 as an engineering consultant in connection with the review and investigation of BakerRisk's work on the Project. Tomasetti was retained by JPC's counsel and, therefore, falls under the consulting expert privilege found in Rule 26(b)(4)(D). Any disclosure to SEW would not waive this privilege. By March 2011 it appears that JPC and SEW were aligned such that the common interest doctrine would protect against any such waiver. See Laporta, 340 N.J. Super. at 262 (citing U.S. v. McPartlin, 595 F.2d 1321, 1336 (7th Cir.1979), cert. denied, 444 U.S. 833 (1979)). Accordingly, BakerRisk's Motion with respect to Tomasetti is **DENIED**

HavTek was engaged by JPC in July 2010. The Court's in camera review demonstrates that HavTek was retained by JPC as a consulting expert. Therefore, like Tomasetti, any

communications between JPC and HavTek are protected by the consulting expert privilege found in Rule 26(b)(4)(D). Accordingly, BakerRisk's Motion with respect to HavTek is **DENIED**.

      **D.**      **JPC Communications With SEW**

BakerRisk seeks communications between JPC, JPC's counsel and SEW. JPC claims these communications are protected by attorney-client privilege and the common interest doctrine. BakerRisk maintains the attorney-client privilege was waived when JPC disclosed the communications to "third-party" SEW. Def.'s Br. at 8.

The documents being withheld involve communications between JPC and SEW which began in October 2011 and continued through May 2012. By this time, JPC and SEW "share[d] at least a substantially similar legal interest." In re Teleglobe Commc'ns Corp., 493 F.3d 345, 365 (3d Cir. 2007). Accordingly, the documents are protected by the attorney-client privilege and common interest doctrines. On this basis, BakerRisk's Motion with respect to JPC communications with SEW is **DENIED**.

**IV.**      **CONCLUSION & ORDER**

The Court having considered the papers submitted and opposition thereto and, for the reasons set forth above;

**IT IS** on this 18th day of June, 2013,

**ORDERED** that BakerRisk's Motion to Compel Certain Discovery is **GRANTED**, in part, and **DENIED**, in part, as set forth above; and it is further

**ORDERED** that the Court will conduct an in-person status conference with the Parties on July 12, 2013 at 10:00 AM; and it is further

**ORDERED** that JPC shall produce the SGH Report within seven (7) days from the date this Order is entered.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**